Opinion by
Mr. Justice Moore.
Defendants in error were plaintiffs in the trial court and we will refer to them by name or as plaintiffs. We will refer to plaintiffs in error as the Matkins or as defendants.
The action was filed by A. C. and Lucille Turner seeking an injunction against Fred and Mona Matkin enjoining them from harvesting “volunteer” wheat from certain real estate in Kiowa County, Colorado, which farm lands had recently theretofore been conveyed by the Matkins to the Turners. Upon motion of the Turners, Des Marteau & Montgomery were joined as plaintiffs.
Pursuant to stipulation of the parties the wheat in dispute was harvested. The costs connected therewith were paid and the remaining proceeds amounting to $8,611.34 were deposited with the clerk of the trial court to be disposed of as indicated by judgment thereafter to be entered. Plaintiffs thereupon filed their amended complaint in which they sought judgment awarding them the sum thus placed in the hands of the clerk of the court.
Defendants filed a counterclaim in which they alleged that under pertinent contracts they were entitled to the landlord’s share of the proceeds derived from the sale of the volunteer wheat. They further sought to recover *198 damages for the destruction by plaintiffs of • certain sown wheat allegedly belonging to them.
The trial court entered detailed findings of fact with reference to which there was little or no dispute in the evidence. The factual situation out of which the controversy arises is clearly presented in the court’s findings, from which we quote the following:
“ (1) Des Marteau & Montgomery are real estate brokers licensed to do business in the State of Colorado, and in 1958 defendants listed the land with them for sale. On November 21, 1958, Des Marteau & Montgomery pursuant to the listing, obtained a contract of exchange with the Turners (Def. Ex. 3), a copy of which was furnished defendants. Defendants kept delaying their ratification of this contract until the spring of 1959, when Des Marteau & Montgomery returned Turners’ down payment, and advised defendants the contract was terminated.
“At this time the listing of the land for sale by defendants with Des Marteau & Montgomery also terminated.
“(2) On October 29, 1959, Des Marteau & Montgomery wrote defendants (Def. Ex. 4) that they had a client interested in trading land for defendants’ land. Defendants were not interested in acquiring land in a trade, and did not accept the proposition outlined in the letter. Des Marteau & Montgomery then proposed to purchase the land on their own account, and as a result a contract was entered into on November 3, 1959 (PL Ex. A). This contract, with reference to crops, provided:
“ ‘Possession and Crops: 2nd party is to receive immediate and full possession of land not now in sown wheat and milo, but possession of such land in sown wheat or milo after crops have been harvested therefrom. 2nd party is to receive % crop rental from sown wheat and milo delivered to market.’
*199 “(3) On the following day, November 4, 1959, Des Marteau and Montgomery contracted to exchange the Matkin land for land owned by the Turners. With reference to the crops on the Matkin land, this contract (PI. Ex. B) provided:
“ ‘Possession by 2nd party: 2nd party is to receive possession of land exchanged for as follows: Immediate possession of all land not now in sowed wheat or milo, and is to receive % crop rental from sowed wheat and milo delivered to market.’
“At the time of the contracts there was sown wheat on the land comprising some 200 acres, and there was volunteer wheat on the land in section 13, and about 430 acres of volunteer wheat on the other land. The exact amount of sown wheat was not clearly disclosed by the evidence.
“(4) During the 1959-1960 winter the sown wheat was blowing, and defendants had it chisled. By May the sowed wheat had no value whatsoever, and was not worth harvesting. The volunteer wheat, on the other hand, was a good crop.
“(5) Lynn Taylor became Turners’ tenant on the land in about May, 1960, and he destroyed the volunteer wheat on Section 13, and was preparing to destroy other volunteer wheat, when Mr. Matkin came by and asked Mr. Taylor to quit destroying the good volunteer wheat, and to destroy the sown wheat, which had no value. At Taylor’s request, Matkin gave Taylor written authorization to destroy the sown wheat (PI. Ex. G.) Taylor then proceeded to destroy sown wheat until there remained about 430 total wheat acres, of which only a few were sown. Neither of the plaintiffs were present at this meeting, nor did they know of it or consent to what was done by the tenant and Mr. Matkin.
“(6) Des Marteau & Montgomery paid defendants $79,000.00 for their land. They received $15,000.00 from the Turners, and later sold the Turner land for a price that enabled them to make $4,700.00 overall profit from *200 the transactions. The resale of the Turner land occurred subsequent to the November, 1959, contracts, and information concerning the resale was not available at that time.
“(7) Defendants were paid in full for their land, in cash, and upon payment they conveyed the land to the Turners (PI. Ex. C and D) by warranty deeds, without reservations or exceptions of any kind.
“(8) At the time of harvest there were twelve acres of sown wheat, which produced 286 bushels 40 pounds of wheat. The remaining acreage was volunteer. Of the proceeds in the hands of the Clerk of this Court, $471.85 represents the proceeds from the sowed wheat. The balance of $8,139.49 represents proceeds from volunteer wheat.”
The trial court concluded that plaintiffs were entitled to the proceeds derived from the sale of the volunteer wheat in the amount of $8,139.49, and that defendants were entitled to the monies derived from the sale of the sown wheat in the amount of $471.85, and entered judgment accordingly. Defendants seek review of this judgment by writ of error.
It is argued as grounds for reversal of the judgment, inter alia, that:
(1) There was no privity of contract between plaintiffs Turner and defendants, and that the contracts are accordingly unenforceable against the Matkins.
(2) Although growing crops generally pass with a deed to the realty, an oral reservation of the said crops may be admissible in evidence.
(3) The trial court erroneously held that Des Marteau & Montgomery was not a broker at the consummation of this transaction, whereas the weight of the evidence shows clearly that the contrary is true. And
(4) The defendants, upon learning of the unauthorized and unconscionable profit secured, by Des Marteau & Montgomery, their agent, along with additional *201 breaches of duty, they attempted to amend their pleadings to include such a claim. This motion was erroneously denied by the court below.
With reference to the first contention above noted, the trial court concluded that when Des Marteau & Montgomery contracted to buy the Matkins’ land on their own account they acquired an interest in the volunteer wheat which they could and did in fact assign to the Turners, and that by virtue of the second contract and the deeds which the Matkins executed to the Turners it could not be contended that there was no privity of contract between the grantors and grantees in the deed. In reaching this conclusion the trial court did not err.
On the second point above mentioned the trial court concluded as a matter of law that the written instruments pertinent to the issue were clear and unambiguous. They expressly reserved sown wheat to defendants but did not reserve any interest whatever in volunteer wheat. There is no ambiguity in the contracts under consideration, and no parol evidence could be admitted to ascertain the intent of the parties thereto. Where, as here, the contract specifically mentioned the reservation of specific growing crops to the exclusion of others, extrinsic evidence could not be received to enlarge upon that reservation in the absence of an allegation of fraud, deceit or mutual mistake.
With reference to the third and fourth contentions mentioned, that Des Marteau & Montgomery were acting as brokers and agents of the Matkins and were guilty of a breach of fiduciary relationship arising therefrom, the trial, court ruled that “Des Marteau & Montgomery did not enter into the contract (PL Ex. A) in the capacity of brokers,” and further adjudged that they did not do “any act or thing to defendants’ prejudice or receive any unjust or unconscionable profit from the transaction.” These conclusions of law have substan *202 tial support in the evidence and will not be disturbed on review.
We have carefully examined the entire record and find no reversible error. The judgment accordingly is affirmed.
Mr. Chief Justice Day and Mr. Justice McWilliams concur.